IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASSAULT SYSTÈMES SOLIDWORKS CORPORATION,<br><br>                    Plaintiff,<br><br>        v.<br><br>BLISSERA CORPORATION & SUREN ALEXANIAN,<br><br>                    Defendant. | Case No.  23-cv-03190-CRB<br><br>**ORDER DENYING MOTION FOR DEFAULT JUDGMENT AND GRANTING MOTION TO SET ASIDE DEFAULT** |

Plaintiff Dassault Systèmes Solidworks Corporation ("Plaintiff") sued Defendants Blissera Corporation ("Blissera"), a developer that engineers and sells personal vacuum elevators[1], and Suren Alexanian ("Alexanian"), Blissera's CEO, (collectively "Defendants") alleging copyright infringement arising from Alexanian's and Blissera employees' use of Plaintiff's software without purchasing the appropriate license. Defendants failed to appear in this case, so—following the Clerk's entry of default on September 29, 2023—Plaintiff moved for default judgment. See Mot. (dkt. 24). However, three days before the hearing on that default judgment motion, Defendants filed a response and moved to set aside default. See Opp. (dkt. 27); Mot. to Set Aside Default (dkt. 28).

The Court finds that these motions are suitable for resolution without oral argument or further briefing, pursuant to Civil Local Rule 7-1(b). For the reasons described below, the Court DENIES Plaintiff's motion for default judgment and GRANTS Defendants'

---

[1] Personal vacuum elevators are elevators that use vacuum compressor technology instead of cables. See Blissera, Technology, Blissera.com (Jan. 25, 2024), https://www.blissera.com/technology.

motion to set aside the default.

## I. BACKGROUND

### A. Factual Background

After entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. Fair Hous. Of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). The complaint alleges as follows.

Plaintiff Dassault Systèmes Solidworks Corporation is the creator, author, and owner of SolidWorks, a computer-aided design and computer-aided engineering software package typically used by engineers, product developers, and manufacturers for 3D modeling. See Mot. at 1. Without purchasing a license, Blissera employees and Alexanian downloaded and installed SolidWorks software and thereby accepted the terms of the SolidWorks license agreement that only gives the user the right to install SolidWorks software once they have a paid license. See Compl. (dkt. 1) ¶¶ 59–60. To download the software, Blissera employees and Alexanian ran an illegal program called SolidSquad crack to bypass SolidWorks' anti-piracy measures. See id. ¶ 68.

Plaintiff implements monitoring technology to detect the use of unlicensed copies of SolidWorks software and transmit data about those uses back to Plaintiff. See Compl. ¶ 14. Plaintiff's monitoring technology detected at least 441 unlicensed uses of the SolidWorks software on three computers belonging to Blissera from July 21, 2019, to September 2, 2023. Compl. ¶ 4, 8. The Plaintiffs allege that they know Alexanian used the unlicensed software because all three of the computers had an account registered to SolidWorks software with the email address "alex@blissera.com." See Compl. ¶ 25, 39, 47. Defendants also utilized add-ons to the SolidWorks software without purchasing them, including Inspection Professional, Simulation Premium, and CAM and MBD Standard add-ons. Compl. Ex. 3 at 2; Mot. Ex. 1 (Taggert Decl.) ¶¶ 11–14.

Once Plaintiff detected the unlicensed uses of its software, it sent a letter to Alexanian instructing that he and Blissera cease and desist from using the unlicensed technology. See Compl. ¶ 72. After some limited communication between Plaintiff's

2

counsel and Alexanian on behalf of himself and Blissera, Alexanian stopped responding. See id. ¶ 73. A compliance mediator from Plaintiff subsequently communicated with Defendants between November 10, 2022, and November 16, 2022, to try to resolve the dispute, but Defendants stopped responding to those communications too. Id. ¶ 74; id. Ex. 6. Plaintiff has detected the unlicensed use of its software on Blissera computers as recently as September 2, 2023. See Mot. at 5.

### B. Procedural Background

Plaintiff filed this suit on June 27, 2023. See Compl. Defendants were served soon thereafter: Blissera was served on July 5, 2023, and Alexanian was served on July 20, 2023. See Blissera Certificate of Service (dkt. 9); Alexanian Certificate of Service (dkt. 14). Neither Blissera nor Alexanian responded to the complaint within the time required by Federal Rule of Civil Procedure 12. The clerk entered default on September 29, 2023, and a copy was sent to Defendants at 101 Jefferson Dr., Menlo Park CA 94025-1114. See Clerk's Notice of Entry of Default (dkt. 22). Subsequently, Plaintiffs sent Defendant the notice of motion for default judgment and the motion in support of default judgment both to 101 Jefferson Dr., Menlo Park CA 94025-1114 and to Reid Dammann, counsel for Defendants, by email. See Notice of Mot. (dkt. 24) at 2. Plaintiff then filed this motion for default judgment. At the time of filing, Defendants still had not appeared in this action. However, three days before the hearing on the motion for default judgment, Defendants filed an opposition and a motion to set aside the entry of default.

## II. MOTION FOR DEFAULT JUDGMENT

### A. Legal Standard

"[E]ntry of a default judgment is within the discretion of the court." Lau Ah Yew v. Dulles, 236 F.2d 415, 416 (9th Cir. 1956). In determining whether to enter default judgment, the Court must first assess whether service of process on the party against whom default is requested was proper and whether the Court properly has jurisdiction. Folkmanis, Inc. v. Uptown Toys LLC, No. 18-cv-00955-EMC, 2018 WL 4361140, *1–*2 (N.D. Cal. Sept. 13, 2018); In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Then, the Court

examines the Eitel factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### B. Discussion

#### 1. Service of Process

"In deciding whether to grant or deny default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit." Folkmanis, Inc., 2018 WL 4361140, at *1–*2 (internal quotation marks and citation omitted). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may be served by "delivering a copy of the summons and complaint to the individual personally" or by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(2)(A); Fed. R. Civ. P. (e)(1). A corporation must be served "in the manner prescribed by Rule 4(e)(1). Fed. R. Civ. P. (h)(1)(A).

Substitute service is permitted in California where "a copy of the summons and of the complaint cannot with reasonable diligence be personally delivered to the person to be served . . . a summons may be served by leaving a copy of the summons and of the complaint at such person's usual place of business in the presence of . . . a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." California Code of Civil Procedure § 415.20(b).

Blissera was served with the complaint on July 10, 2023, and Alexanian was subsequently served by substituted service on July 24, 2023, both at their usual place of business at 101 Jefferson Dr., Menlo Park CA 94025-1114.  See Blissera Certificate of Service; see Alexanian Certificate of Service.  Therefore, under Rule 4(h) and (e), service was adequate for Blissera Corporation.  Additionally, under Rule 4(e) and California Code of Civil Procedure section 415.20(b), service was adequate for Alexanian.

### 2. Jurisdiction

Where, as here, a plaintiff seeks entry of default judgment against a party who has failed to plead or otherwise defend, "a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d at 712.  Under 28 U.S.C § 1331, federal courts have subject matter jurisdiction over cases "arising under . . . [the] laws . . . of the United States."  Additionally, under 28 U.S.C. §1338(a), federal courts have subject matter jurisdiction over cases "arising under any Act of Congress relating to . . . copyrights."  Two of Plaintiff's claims have been brought under federal statutes that provide protections for copyrights.  The first is for Federal Copyright Infringement which prevents the "viola[tion] . . . of the exclusive rights of a copyright owner."  17 U.S.C. § 501(a).  The second is for the Circumvention of Technological Measures, which states that "[n]o person shall circumvent a technological measure that effectively controls access to . . . a copyrighted work."  17 U.S.C. §1201(a)–(b).  Courts may also exercise supplemental jurisdiction "over . . . claims that are so related to claims . . . within [the court's] original jurisdiction that they form part of the same case or controversy."  28 U.S.C. §1367(a).  Here, the breach of contract claims arise from the same facts as the Copyright Infringement and Circumvention of Technological Measure claims.  Therefore, the Court may properly exercise subject matter jurisdiction.

The Court may exercise personal jurisdiction over the Defendants because Blissera's principal place of business is in Menlo Park, CA and Alexanian resides in Sunnyvale, CA.  See Compl. ¶¶ 7–8.

### 3. <u>Eitel</u> Factors

Applying the <u>Eitel</u> factors, the Court addresses the possibility of prejudice from entering a default judgment, the merits of Plaintiff's claims and sufficiency of the complaint, the money at stake, the possibility of a dispute of material facts, whether the entry of default was due to excusable neglect, and whether the public policy preference for a decision on the merits precludes entry of default judgment.

#### a. Possibility of Prejudice

The first <u>Eitel</u> factor asks whether there would be prejudice to plaintiff from not entering judgment. 782 F.2d at 1471. Here, because Defendants have moved to set aside default and indicated their intention to litigate the matter, Plaintiff will suffer no prejudice by litigating the case. See <u>Mot. to Set Aside Default</u>; <u>Sorensen v. AmPro Tools Corp.</u>, No. 08-00096 CW, 2009 WL 35239, *1–*2 (N.D. Cal. Jan. 6, 2009) (holding that where a plaintiff had entered default and a defendant subsequently motioned to set aside default, the plaintiff would suffer no prejudice by litigating the case). Therefore, the first <u>Eitel</u> factor weighs against entering default judgment.

#### b. Merits of Claims & Sufficiency of the Complaint

The second and third <u>Eitel</u> factors address whether the Plaintiff's claims are adequately pleaded and sufficient to find liability on the facts alleged. 782 F.2d at 1471. However, the "defendant is not held to admit facts that are not well pleaded or to admit conclusions of law." <u>DirectTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007). The Plaintiff brings claims for Copyright Infringement, Circumvention of Technological Measures, and Breach of Contract. The Court addresses each claim in turn, assessing whether they satisfy the second and third <u>Eitel</u> factors.

##### i. Federal Copyright Infringement (17 U.S.C. § 106)

Under 17 U.S.C. § 106, copyright infringement is established where the plaintiff proves "(1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." <u>Feist Publications v. Rural Telephone Service Co.</u>, 499 U.S. 340, 361 (1991). The Plaintiff alleges copyright infringement under two theories: (1) direct

6

1     infringement by Alexanian and (2) vicarious infringement by Blissera via Alexanian and
2     other Blissera employees.  See Mot. at 11–12.  The Court will address each theory in turn.
3         To establish direct infringement, a plaintiff must (1) show "ownership of the
4     allegedly infringed material" and (2) "demonstrate that the alleged infringers violated at
5     least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  A&M
6     Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001).  Additionally, direct
7     infringement requires the plaintiff to show volitional conduct.  Perfect 10, Inc. v.
8     Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017).  Volitional conduct, in the copyright
9     context, means that "direct liability must be premised on conduct that can reasonably be
10    described as the direct cause of the infringement."  Id. (quoting Perfect 10, 2014 WL
11    8628034, *1, *7 (C.D. Cal. Nov. 14, 2014)).
12        Here, Plaintiff is the owner of all rights and title to the copyrights for SolidWorks.
13    See Compl. ¶¶ 11–13.  Plaintiff has alleged that Alexanian violated Plaintiff's exclusive
14    right to reproduce SolidWorks software in copies without authorization.  Id. at ¶¶ 79–80;
15    see 17 U.S.C. § 106(1).  An unauthorized copy is created each time the Defendant executes
16    the SolidWorks software onto a Blissera computer which copies and stores SolidWorks
17    code.  Id. at ¶¶ 53, 81; see 17 U.S.C. § 106(1).
18        As for the volition element, Plaintiff alleges that Alexanian downloaded the
19    SolidWorks software from the internet, installed it, and ran it which created a copy on their
20    computer's storage system.  See Compl. ¶¶ 79–81.  Plaintiff also alleges that Alexanian ran
21    SolidSquad to access the software without a license key.  See id. at ¶ 93.  This constitutes
22    direct actions by Alexanian that cause the infringement.  Thus, the elements of direct
23    infringement are met and the second and third Eitel factors are satisfied as to this claim.
24        "To prevail on a claim for vicarious infringement, a plaintiff must prove 'the
25    defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct
26    financial interest in the infringing activity.'"  Perfect 10, 847 F.3d at 672.  "[A] defendant
27    exercises control over a direct infringer when he has both a legal right to stop or limit the
28    directly infringing conduct, as well as the practical ability to do so."  Perfect 10, Inc. v.

7

Amazon.com, Inc., 508 F.3d 1146, 1173 (9th Cir. 2007).  A "financial benefit exists where the availability of the infringing material acts as a draw for customers." Perfect 10, 847 F.3d at 673.  "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." Id.

Plaintiff sufficiently alleges that Blissera had the right and ability to supervise the infringing conduct.  Specifically, Plaintiff states that the infringing activity was conducted by Alexanian and other Blissera employees on computers owned by or under the control of Blissera.  Compl. ¶¶ 34, 41, 49.  Therefore, based on this ownership, Plaintiff adequately pleads that Blissera had the legal right and practical ability to stop the infringing conduct and is likely to succeed on the merits of its direct infringement claim.

However, while Plaintiff does make a conclusory allegation that Blissera "received a direct financial benefit from the copyright infringement," Plaintiff does not explain how. Compl. ¶ 84.  The Court has noted that to prove the direct financial benefit prong, the Plaintiff must show "more than evidence that customers were 'drawn' to [a company] to obtain access to infringing material in general." Perfect 10, 847 F.3d at 673.  Here, the Plaintiff has not alleged even the proposition that customers were drawn to Blissera as a result of the copyright infringement.  Thus, the element here is not met, vicarious liability is not sufficiently pleaded on the face of the complaint, and Plaintiff is unlikely to succeed on this claim.

### ii. Circumvention of Technological Measures (17 U.S.C. § 1201)

"Section 1201(a)(1) of the [Digital Millennium Copyright Act ("DMCA")] prohibits circumvention of 'a technological measure that effectively controls access to' a copyrighted work." Synopsys v. InnoGrit, Corp., Case No. 19-CV-02082-LHK, 2019 WL 4848387, *1, *7 (N.D. Cal. Oct. 1, 2019).

"The DMCA defines a 'technological measure that effectively controls access to a

8

work' as a measure that, 'in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.'" 17 U.S.C. §1201(a)(3)(B); Synopsys, 2019 WL 4848387 at *7. "The DMCA dictates that 'to "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or to otherwise avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner.'" 17 U.S.C. § 1201(a)(3)(A).

      Plaintiff alleges that Alexanian and Blissera employees utilized a SolidSquad crack to access the SolidWorks software without a license key. Compl. ¶ 30. SolidSquad crack is a computer software program used to defeat license key systems which protect and control access to licensed software. Compl. ¶ 67. License key systems, like the one Plaintiff describes in its complaint, are "technological measures" for the purposes of the DMCA. Synopsys, 2019 WL 4848387 at *7. By using SolidSquad crack to gain access to Plaintiff's software, Defendants circumvented Plaintiff's license key and gained access to the SolidWorks software.[2] Thus, the elements of Plaintiff's circumvention of technological measures claim are adequately pleaded and the claim is likely to succeed on the merits.

### iii. Breach of Contract

      Plaintiff alleges breach of contract against both Defendants. The license agreement is governed by Massachusetts law. Compl. ¶ 117. "In order to prevail on a breach of contract claim in Massachusetts, a plaintiff must show 'the existence of a valid and binding contract, that the defendant breached the contract's terms, and the plaintiff suffered damages as a result of the breach.'" Thakkar v. United States, 389 F. Supp. 3d 160, 177 (D. Mass 2019) (quoting Scholz v. Goudreau, 901 F.3d 37, 43 (1st Cir. 2018)). "Under Massachusetts law, the formation of a contract requires a definite offer, acceptance, and consideration." Berkele v. Lyft, 199 F. Supp. 3d 284, 294 (D. Mass. 2016). "Formation of

---

[2] In fact, Plaintiff alleges that Defendants ran the SolidSquad crack at least 441 times to do so. Compl. ¶ 67; Ex. 1.

a contract is judged by the objective conduct of the parties, rather than their subjective intent." Id.

During the installation process of Solidworks, the user is provided with a link to the license agreement. Compl. ¶ 59. The license agreement states that "installing and using [SolidWorks] . . . will signify your agreement to be bound by these terms and conditions." Compl. ¶ 59. Therefore, by downloading the software, Plaintiff alleges that Alexanian and other Blissera employees necessarily agreed to the terms and conditions of the SolidWorks software. The Plaintiff alleges that the agreement is also supported by consideration in the form of the "right to access and/or download [Solidworks] and to use it in accordance with the terms and conditions set out in the agreement." Mot. at 10. Thus, the license qualifies as a valid and binding contract.

The agreement states that a user "may not load or use [SolidWorks] in any computer or copy it without a right to do so." Compl., Ex. 3 at 2. It only gives the user permission to "install and use one (1) copy of [SolidWorks] on any single computer" once they "have paid the license fee for a single-user license of [SolidWorks]." Compl., Ex. 3 at 3–4. Plaintiff sufficiently alleges that neither Alexanian nor any of their employees at Blissera paid for the copies of SolidWorks that were installed and thus, breached this term of the license agreement. Compl. ¶ 64. The license agreement also states that Plaintiff "reserves the right to use a hardware lock device, license administration software, and/or a license authorization key to control access to [SolidWorks.]" Compl., Ex. 3 at 24. Additionally, it specifies that the user "may not take steps to avoid or defeat the purpose of any such measures" and that the "use of any offering without any required lock device or authorization key provided by [Plaintiff] is prohibited." Id. Plaintiff sufficiently alleges that Blissera and Alexanian breached this term by running SolidSquad crack to circumvent the license key measures it implemented. Compl. ¶¶ 67–70, 112–116.

Finally, Plaintiff alleges that they incurred damages as a result of the breach, in the form of unpaid license fees. They allege actual damages attributable to this breach in the amount of $79,374. See Mot. at 19–20. Thus, Plaintiff sufficiently pleads a claim for

10

1    breach of contract and meets both the second and third Eitel factors.

2        Therefore, Plaintiff has sufficiently pleaded and established likelihood of success
3    for its direct copyright infringement, circumvention of technological measures, and breach
4    of contract claims, but has not for its copyright infringement claim for vicarious
5    infringement. Because almost all of Plaintiff's claims are sufficiently pleaded and likely to
6    succeed, the second and third Eitel factors weigh in favor of default judgment.

                                            **c.**     **Money at Stake**

8        As for the fourth factor, the sum of money at stake, "the Court must consider the
9    amount of money at stake in relation to the seriousness of Defendant's conduct." Dr. JKL
10   Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1050 (N.D. Cal. 2010) (citation and
11   quotation marks omitted). When the amount at stake is substantial or unreasonable in
12   light of the allegations in the complaint, default judgment is disfavored. See Eitel, 782
13   F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million
14   in damages and the parties disputed material facts in the pleadings).

15       Plaintiff requests damages in the total of $1,590,603.40. For its breach of contract
16   claim, Plaintiff requests $79,374 in actual damages, which totals Defendants' unpaid license
17   subscriptions, including the software license for each of Defendants' three computers and all
18   applicable add-ons. Mot. at 16–17. In addition, Plaintiff requests $396,870 in statutory
19   damages for their copyright infringement claim, see 17 U.S.C. §504(c)(1), $1,102,500 in
20   statutory damages for Defendants' 441 violations of the DMCA, see 17 U.S.C.
21   §1203(c)(3)(A), and $11,859.40 in attorney's fees and costs. See Mot. at 25.

22       Although Plaintiff has alleged serious claims that, if true, have caused Plaintiff harm,
23   the amount of money at stake is nevertheless substantial. This sum is especially
24   considerable in light of the Defendant's purported lack of financial resources to defend this
25   suit. See Mot. at 2; Alexanian Decl. ¶¶ 34–37, 39, 40. This factor weighs against default
26   judgment because in general, default judgment is disfavored where there is a large sum of
27   money involved. Eitel, 782 F.2d at 1472.

28

### 4. Remaining Eitel Factors

The remaining Eitel factors similarly weigh against default judgment. The fifth factor asks whether there is a possibility of dispute about material facts. "[W]hen the Clerk has entered default, all well-pleaded factual allegations set forth in the complaint [are] taken as true." Atain Specialty Ins. Co. v. North Bay Waterproofing, Inc., No. 14-cv-04056, 2015 WL 428161 *1, * 4 (N.D. Cal. January 30, 2015). However, "this assumption of truth does not apply as forcefully" where the defaulted defendant "makes an appearance and disputes the material facts in the pleadings. S.E.C. v. Harrison, No. 8:21-cv-01610-SPG-DFM, 2022 WL 17327325, *1, *9 (C.D. Cal. Oct. 4, 2022) (finding that a defendant with default judgment entered against them and who had failed to file a motion to set aside entry of default still satisfied this Eitel factor in her favor because she opposed the entry of default and disputed factual allegations in the plaintiff's complaint). Here, the defaulted Defendants have opposed the motion for default judgment and disputed factual allegations in the complaint. See Opp. This actual dispute of material facts between the parties weighs against entry of default judgment.

The sixth Eitel factor examines whether the defendant's failure to respond to the complaint was the result of excusable neglect. Eitel, 782 F.2d at 1471–72. The Court has held that "a signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence. S.E.C. v. Internet Solutions for Business Inc., 509 F.3d 1161, 1163 (9th Cir. 2007). Here, Plaintiff provided signed returns of service, however, Defendants subsequently filed an opposition to Plaintiff's motion for default judgment and a motion to set aside default. See Opp.; Mot. to Set Aside Default. In their filings, defendants dispute that they properly received service. Opp. at 10–11. The other explanations they offer for failing to respond to the complaint are that (1) they were in settlement negotiations with Plaintiff and therefore, did not expect that Plaintiff would pursue default against them and (2) Defendant did not have the funds to litigate this case until late January 2024. See Opp., Alexanian Decl. ¶¶ 36–37, 39, 41. While Defendants did not defend this action initially, Defendants did seek counsel once aware of the suit and

12

were actively engaging in settlement negotiations. See Alexanian Decl. ¶ 39. They have now appeared in the action and indicated their intent to defend against it. Therefore, because there is some evidence of excusable neglect—that is, Defendants became aware of the suit late and then thought the suit was on hold while they engaged in settlement negotiations—this factor weighs slightly against entry of default judgment.

The last Eitel factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. Eitel, 782 F.2d at 1472. Courts have found that "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." Harrison, 2022 WL 17327325 at *9 (citations omitted). Here, because Defendant has opposed this Motion and indicated their intent to litigate these claims, this factor weighs against entry of default judgment. Alexanian Decl. ¶ 41.

Because the majority of the Eitel factors weigh against entry of default judgment, and because "[c]ases should be decided upon their merits whenever reasonably possible," 782 F.2d at 1472, the Court DENIES entry of default judgment.

## III.   MOTION TO SET ASIDE DEFAULT

Given that the Court denied the motion for default judgment, the Court now analyzes Defendants' motion to set aside the clerk's entry of default.

### A.   Legal Standard

Federal Rule of Civil Procedure 55(c) provides that an entry of default may be set aside "[f]or good cause shown." See Hawaii Carpenters' Tr. Fund v. Stone, 794 F.2d 508, 513 (9th Cir. 1986). The good cause analysis considers three factors: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default judgment would prejudice the plaintiff. See TCI Grp. Life Ins. Plan v. Knoebber, 244 F.3d 691, 696 (9th Cir. 2001).

Default judgments are generally disfavored, the Court must apply Rule 55 liberally, and any doubts must be resolved in favor of the motion to set aside entry of default. See Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987). Furthermore, the court's discretion is "especially broad" where a party seeks to set aside entry of default

13

rather than a default judgment.  See O'Connor v. Nevada, 27 F.3d 357, 364 (9th Cir. 1994).

### B. Discussion

#### 1. Defendants' Culpability

The first factor requires the Court to consider whether Defendant's culpable conduct led to their default.  "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." Knoebber, 244 F.3d at 691.  However, a failure to answer is not intentional unless done so willfully, deliberately, or in bad faith." Id. at 697.  Where the defendant's failure to answer is neglectful but they offer a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with decisionmaking, or otherwise manipulate the legal process," courts have found that the conduct is not intentional.  Id. at 697–98.

Here, the Defendants allege that they became aware of the lawsuit on August 16, 2023, when Plaintiff's counsel emailed Alexanian a copy of the complaint and notice that Plaintiff was in default.  Alexanian Decl. ¶ 16, Ex. 17.  Soon after, Alexanian retained counsel to represent Defendants for the limited purpose of negotiating a settlement agreement.  Alexanian Decl. ¶ 34; Dammann Decl. (dkt. 28) ¶ 3.  Defendants claim that this representation was so limited because Defendants could not afford a full defense of the litigation at the time.  Id.

Between August 16, 2023, and December 2023, Plaintiffs and Defendants engaged in settlement negotiations.  Defendants claim that because they were in negotiations with Plaintiff, they believed that Plaintiff would refrain from moving for default or pursuing a motion for default judgment.  Alexanian Decl. ¶ 39.  This may seem odd given that default had already been entered on September 29, 2023.  See Clerk's Entry of Default.  However, according to Defendants, they did not receive a notice of Plaintiff's motion for entry of default or the clerk's notice for entry of default until Defendants' counsel emailed them a copy on December 1, 2023.  Opp. at 7; Alexanian Decl. ¶ 39.

While Defendants were undeniably aware of the suit by August 16, 2023, at the latest, they offer a plausible explanation as to why they did not file a response. Namely, that they were engaged in settlement negotiations for many months and were unaware that Plaintiff was continuing forward with the suit while those negotiations took place. Alexanian Decl. ¶ 39.

Thus, Defendants' failure to file an answer does not seem to be devious, deliberate, willful, or in bad faith. There is no evidence that Defendants intended to take advantage of Plaintiff or manipulate the legal process. Rather, it seems that Defendants were actively engaged in trying to proactively settle the suit. Courts have found that where a defendant's conduct is not culpable, their failure to respond to a lawsuit is excusable and it is therefore in the interests of substantial justice to vacate the default and decide the case on the merits. Knoebber, 244 F.3d at 697. Because Defendants have offered a credible explanation that negates any inference of bad faith, the Court finds that Defendants were not culpable here and this factor thus weighs in favor of setting aside the default.

### 2. Meritorious Defense

To satisfy the second prong of the good faith test, the Defendants must show that they have a meritorious defense to Plaintiff's claims, "which is not a heavy burden." Davy v. Paragon Coin, Inc., No. 18-cv-00671-JSW, 2021 WL 2940200, *1, *3 (N.D. Cal. Mar. 26, 2021). "All that is necessary to satisfy the meritorious defense requirement is to allege sufficient facts that, if true, would constitute a defense." Id. (quoting Knoebber, 244 F.3d at 700) (internal citations omitted). However, if the defendant presents no meritorious defense, "then nothing but pointless delay can result" from setting aside the default Knoebber, 244 F.3d at 697. The inquiry at this stage is not whether the factual allegations are true but rather whether the factual allegations would be the subject of the later litigation. Id.

In their opposition, Defendants claim that they did not use unlicensed copies of SolidWorks. Opp. at 13. Defendants make the same assertions in emails between Solidworks and themselves in the events leading up to the filing of this suit. Alexanian

15

Decl. Exs. 5, 7, 9, 11, 13. Alexanian further alleges that he had received free licenses through a SolidWorks startup program and that the monitoring technology that Plaintiff uses to flag unlicensed uses of SolidWorks software mistakenly identified his uses of the software as unlicensed. Alexanian Decl. Ex. 16. If Defendants' story is true, it constitutes a meritorious defense to Plaintiff's copyright infringement, circumvention of technological measures, and breach of contract claims. Thus, while it is not appropriate to decide whether these assertions are true, the Court finds the facts set forth in Defendant's declaration and its briefing sufficient to establish that Defendant has a meritorious defense. Therefore, this factor weighs in favor of setting aside the default.

### 3. Prejudice to Plaintiff

The third factor of the good faith inquiry addresses whether setting aside the default would prejudice the plaintiff. To be prejudicial, the setting aside of the default must result in greater harm than simply delaying resolution of the case. Knoebber, 244 F.3d at 701. "[T]he standard is whether [plaintiff's] ability to pursue his claim will be hindered." See Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). Here, other than forcing Plaintiff to litigate its claims on the merits—which "cannot be considered prejudicial" for purposes of lifting entry of default—there is no evidence that granting this motion would hinder Plaintiff's ability to pursue its claims. See Knoebber, 244 F.3d at 701. For example, there is no evidence that the delay in litigation has resulted, or will result, in a loss of evidence, increased discovery difficulties, or greater opportunity for fraud or collusion. See Bey v. Malec, et al., No. 18-cv-02626-SI, 2018 WL 3145628, *1, *2 (N.D. Cal. June 27, 2018) (citing Thompson v. American Home Assurance Co., 95 F.3d 429, 433–34 (6th Cir. 1996). Because setting aside the default will not prejudice the plaintiff, this factor weighs in favor of doing so.

Accordingly, because all factors weigh in favor of setting aside the default, the Court concludes that entry of default should be set aside.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for default

judgment as to all claims and GRANTS Defendants' motion to set aside the clerk's entry of default.

**IT IS SO ORDERED.**

Dated: February 5, 2024



CHARLES R. BREYER
United States District Judge